**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSEPH M. AMOOP,** *also known as Anoop Michael Joseph,* | **CIVIL ACTION** |
| Petitioner, | |
| | **No. 19-1638-KSM** |
| *v.* | |
| **MARK GARMAN,** *et al.*, | |
| Respondents. | |

**MEMORANDUM**

**MARSTON, J.**                                        **September 30, 2024**

Petitioner Anoop Joseph[1] is currently incarcerated at SCI Rockview in Bellefonte, Pennsylvania.  This Court previously denied Joseph's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and that denial was rendered final when Joseph declined to file an appeal.  (*See* Doc. Nos. 9, 12.)  Joseph, through counsel, now moves for relief from that judgment pursuant to Federal Rule of Civil Procedure 60(b)(6).  (Doc. No. 30.)  This matter, including Joseph's Rule 60(b) motion, was reassigned to the undersigned on October 30, 2023.  Because Joseph's current motion is in actuality a second or successive habeas petition, the Court lacks jurisdiction over Joseph's claims and the motion is denied.

## I.     FACTS AND PROCEDURAL HISTORY

Because the Court writes primarily for the parties, we provide only a brief summary of the facts and procedural history as relevant to understand Joseph's current motion.

---

[1] Although the underlying state court judgment and conviction refer to Petitioner as "Joseph Amoop," counsel asserts that his "correct name" is Anoop Joseph.  (*See* Doc. No. 30 at 3 n.1.)  Accordingly, the Court refers to Petitioner as "Anoop Joseph."

### A.    Underlying Conduct

Joseph's underlying state convictions are for multiple charges spanning two criminal complaints, Nos. CP-51-CR-14293-2007 and CP-51-14308-2007.  These charges were based on events that occurred on the night of June 4 and in the early morning hours of June 5, 2007, when Joseph was with codefendant Desmond McMoore.  *See Commonwealth v. Amoop*, No. 428 EDA 2017, 2018 WL 4443067, at *1 (Pa. Super. Ct. Sept. 18, 2018).  McMoore, whom the Pennsylvania court found to be a credible witness, testified at Joseph's trial that he and Joseph had been out drinking in Philadelphia that night, and at approximately 2:00 a.m., the two men left a bar in "McMoore's white two door 1996 Chrysler Seabring [sic] looking to commit a robbery."  *Id.* (quoting PCRA Ct. Opn. at 2–4 (Aug. 11, 2017)).

As they drove past Baynton and Church streets, they "saw a large group of people."  *Id.* (quoting PCRA Ct. Opn. at 2–4).  Deciding to rob the group, McMoore "retrieved his gun, a .9 millimeter High Point, from the trunk," and Joseph retrieved his gun, a Tec 9, from under the passenger seat.  *Id.* (quoting PCRA Ct. Opn. at 2–4).  The two men then drove back to where they had seen the crowd of people.  *Id.*  "When the intended victims saw them, the women and two or three males immediately ran."  *Id.* (quoting PCRA Ct. Opn. at 2–4).  Joseph "left the car" and followed them.  *Id.*  McMoore, meanwhile reached through the driver's side window to grab the shirt of Eric Christmas,[2] who had remained at the scene.  *Id.*  "Christmas threw all of his cash into McMoore's lap," but McMoore pointed his gun at Christmas, "demanded more," and at one point, "fired his gun intending to intimidate" Christmas.  *Id.* (quoting PCRA Ct. Opn. at 2–4).

---

[2] It is not clear whether the victim's name is spelled "Christmas" or "Cristmas," as the state court record, prior opinions, and even the current briefing use the two interchangeably.  For purposes of this Memorandum, the Court adopts the spelling used by the PCRA court:  "Christmas."

Joseph returned to the car "as Christmas was attempting to run away" and confronted Christmas near the back of the car. *Id.* (quoting PCRA Ct. Opn. at 2–4).  McMoore heard the victim say, "Ah shit," and then heard Joseph "repeatedly sho[o]t Mr. Christmas." *Id.* (quoting PCRA Ct. Opn. at 2–4).  Joseph, "who was carrying purses," then climbed into the car "and threw the purses into the back seat." *Id.* (quoting PCRA Ct. Opn. at 2–4).  Joseph told McMoore that Christmas had tried to shoot him. *Id.*  McMoore fired two additional shots at Christmas as he lay on the ground before driving off. *Id.*

A few minutes later, McMoore and Joseph stopped at a traffic light at Broad and Lindley Streets. *Id.* (quoting PCRA Ct. Opn. at 2–4).  At the time, Francisco Rodriguez was crossing the street. *Id.*  Rodriguez looked into the car, and Joseph asked him, "What the F are you looking at?" *Id.* (quoting PCRA Ct. Opn. at 2–4).  When Rodriguez kept staring, Joseph "pulled out his gun, pointed it out of the sunroof and repeatedly shot it, striking [Rodriguez]." *Id.* (quoting PCRA Ct. Opn. at 2–4).  At that point, McMoore and Joseph "fled to [Joseph's] house where others eventually joined them." *Id.* (quoting PCRA Ct. Opn. at 2–4).

### B.    Convictions and Direct Appeal

On June 28, 2010, after a bench trial before Judge Shelley Robins New in the Court of Common Pleas of Philadelphia County, Joseph was found guilty of first-degree murder, robbery with intent to inflict serious bodily injury, criminal conspiracy, violations of the uniform firearms act, and possession of an instrument of crime with intent in Case No. CP-51-14308-2007.  (Doc. No. 43 at 17, 43–44.)  And in Case No. CP-51-CR-14293-2007, Joseph was found guilty on additional counts of first-degree murder and possession of an instrument of crime with intent. (Doc. No. 42 at 18, 41–42.)  Joseph was sentenced to an aggregate term of life imprisonment. (Doc. No. 43 at 47.)

Joseph appealed his convictions to the Pennsylvania Superior Court, which affirmed the trial court's judgment of sentence. (Doc. No. 43 at 46–53); *see also Commonwealth v. Amoop*, 60 A.3d 555 (Table) (Pa. Super. Ct. 2012). The Pennsylvania Supreme Court later denied Joseph's request for allowance of appeal. (Doc. No. 42 at 53); *see also Commonwealth v. Amoop*, 63 A.3d 772 (Table) (Pa. 2013).

### C.      PCRA Proceedings

On April 9, 2014, Joseph filed a *pro se* petition for state collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"). (Doc. No. 42 at 22, 58–74); *see also Amoop*, 2018 WL 4443067, at *2. Although the PCRA court appointed counsel for Joseph, Joseph ultimately sought permission to proceed *pro se*. *Amoop*, 2018 WL 4443067, at *2. Joseph's motion was granted, and on June 6, 2016, he was granted "$1000.00 to hire a private investigator." *Id.* Joseph filed a *pro se* amended petition on June 28, 2016. *Id.* Among other things, Joseph argued that his trial counsel rendered ineffective assistance of counsel when he failed to fully investigate the forensic evidence in the case and retain a ballistics expert. (Doc. No. 42 at 107, 126–30.) On January 6, 2017, the PCRA court dismissed the petition without an evidentiary hearing pursuant to 234 Pa. Code Rule 907,[3] and the court issued a written opinion outlining the reasons for that dismissal on August 11, 2017. *Amoop*, 2018 WL 4443067, at *1–2.

---

[3] Rule 907 states:

(1)the judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue.

The opinion, however, did not substantively address Joseph's claim that his counsel was ineffective "for failing to investigate the medical and forensic evidence, consult with and retain experts and present expert testimony or properly cross-examine the Commonwealth's expert." *Id.* at *6.

Joseph appealed the dismissal to the Pennsylvania Superior Court, which affirmed on September 18, 2018. *Id.* at *7. With respect to the ineffective assistance claim referenced above, the appellate court acknowledged that the PCRA court had failed to address Joseph's argument. *Id.* at *6. But the court nevertheless found that Joseph had failed to set forth a sufficient proffer to show he was entitled to an evidentiary hearing with respect to that claim. *Id.* Notably, the court found that Joseph "discuss[ed] *his* disagreement with the ballistics and other evidence presented by the Commonwealth, [but] he proffer[ed] no evidence that a different ballistics expert would support his conclusions." *Id.*

Joseph once again filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on March 26, 2019. *Commonwealth v. Amoop*, 205 A.3d 312 (Table) (Pa. 2019).

### D.     Federal Habeas Proceedings

On April 2, 2019, Joseph filed a *pro se* habeas petition in this Court (Doc. No. 1), which was assigned to the Honorable Mitchell S. Goldberg, United States District Chief Judge, and referred to the Honorable (Ret.) Thomas J. Rueter, United States Magistrate Judge, for the creation of a report and recommendation (Doc. No. 3). As relevant here, Joseph's petition once again argued that his trial counsel provided ineffective assistance when he failed to fully investigate the forensic evidence and retain a ballistics expert. (Doc. No. 1 at ¶ 12.)

On September 6, 2019, after finding that the claim was exhausted and had been ruled on by the Pennsylvania Superior Court during Joseph's PCRA appeal, Judge Rueter submitted a

report and recommendation (the "R&R"), which recommended denying Joseph's habeas petition. As to this ineffective assistance claim, Judge Rueter found that Joseph had once again failed to "provide[ ] the name of [a] ballistics expert" and had failed to "produce[ ] an affidavit or expert report that would support his theory." (Doc. No. 9 at 13.) Without that evidence, Joseph could not show that his counsel rendered deficient performance. (*Id.* at 13 & n.3 (citing *Strickland*, 466 U.S. at 689 and *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991)).)

Joseph did not file objections to the R&R, and after it had been pending for nearly five months, it was approved and adopted by Chief Judge Goldberg on January 28, 2020. (Doc. No. 12.) Joseph did not appeal Chief Judge Goldberg's order.

### E.    Second PCRA Petition

On December 17, 2019—after Judge Rueter entered the R&R but before it was adopted by Chief Judge Goldberg—Joseph filed a second PCRA petition before the Pennsylvania Court of Common Pleas. (*See* Doc. No. 42 at 30–31, 197–24.) Joseph explained that he had retained ballistics expert, Carl A. Leisinger, III, who had reviewed the evidence and formed multiple opinions about the likelihood that Joseph shot the bullets that killed Christmas and Rodriguez. (*See id.*) Of note, Leisinger opined: (1) it was very likely that McMoore "fired at Mr. Christmas four(4) times not twice as he stated"; (2) it would have been "extremely difficult" for Joseph to have shot Rodriguez through the car's sunroof in the manner described; and (3) given this difficulty and the upward trajectory of the bullets that killed Rodriguez, "[i]t would be a [sic] much simpler if the shooter was in the driver's seat." (*Id.* at 207–09.) Joseph argued that Leisinger's expert report amounted to "newly discovered" evidence that would have "likely change[d] the outcome of the trial . . . if it was available at the time of trial." (*Id.* at 218.)

On March 19, 2021, Judge Robins New issued a notice of intent to dismiss the second petition pursuant to Rule 907. (*Id.* at 226.) Joseph responded to the notice and argued against

dismissal. (*Id.* at 228.) On August 18, 2021, Judge Robins New dismissed the petition as

untimely. (*Id.* at 239, 261, 263.) Joseph appealed the denial (*id.* at 241), and the Pennsylvania

Superior Court affirmed the dismissal on August 30, 2022 (*id.* at 261).

### F.     The Current 60(b)(6) Motion

On October 18, 2021—one month after Judge Robins New dismissed Joseph's second

PCRA petition and one year and nine months after Chief Judge Goldberg adopted Judge Rueter's

R&R on Joseph's § 2254 habeas petition—Joseph filed a *pro se* motion for relief from judgment

pursuant to Federal Rule of Civil Procedure 60(b)(6) in this Court. (Doc. No. 15.) This Court

appointed counsel (Doc. No. 20), and on November 11, 2022, Joseph filed the current counseled

motion for relief under Rule 60(b)(6) (Doc. No. 30). On February 22, 2023, the Commonwealth

filed a response brief opposing that motion (Doc. No. 33), and on March 31, 2023, the

Commonwealth filed a reply brief (Doc. No. 40). On October 30, 2023, Chief Judge Goldberg

recused himself from overseeing further proceedings,[4] and the matter was reassigned to the

undersigned.

---

[4] Chief Judge Goldberg recused himself when he realized that his sister-in-law, Judge Robins New, is the state court judge who oversaw Joseph's criminal trial, initial PCRA petition, and secondary PCRA petition. It is unclear whether this relationship required recusal under the federal recusal statute. *Cf. Clemmons v. Wolfe*, 377 F.3d 322, 328–29 (3d Cir. 2004) ("Because of the absence of any applicable statute," including "the federal statute on recusals," "and in order to avoid the recurrence of this situation, we now exercise our supervisory power to require that each federal district court judge in this circuit recuse himself or herself from participating in a 28 U.S.C. § 2254 habeas corpus petition of a defendant raising any issue concerning the trial or conviction over which *that judge* presided in his or her former capacity as a state court judge." (emphasis added)). Assuming that recusal was necessary to avoid the appearance of partiality, *see id.*; 28 U.S.C. § 2254(a), it is equally unclear whether Judge Goldberg's relationship with Judge Robins New can be used as a basis to now question Judge Goldberg's January 2020 order adopting the R&R and dismissing Joseph's § 2254 petition. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862 (1988) ("A conclusion that a . . . violation [of the recusal statute] occurred does not, however, end our inquiry. As in other areas of the law, there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance."); *Clemmons*, 377 F.3d at 329 (vacating district court's denial of state prisoner's habeas petition challenging a state court conviction over which the federal habeas judge presided in his former capacity as a state court judge). With this legal landscape in mind and to avoid any appearance of partiality, the undersigned performed an independent review of the R&R and proceedings surrounding it. *Cf., e.g., Chambers v.*

## II.      LEGAL STANDARD

"The standards for evaluating a 60(b) motion are well established." *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 284 (3d Cir. 2021).  That Rule "enumerates specific circumstances in which a party may be relieved of the effect of a judgment, such as mistake, newly discovered evidence, fraud, and the like." *Buck v. Davis*, 580 U.S. 100, 112 (2017).  "The Rule concludes with a catchall category—subdivision (b)(6)—providing that a court may lift a judgment for 'any other reason that justifies relief.'" *Buck*, 580 U.S. at 112.  "A court may grant equitable relief under Rule 60(b)(6) 'in extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur.'" *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 284 (3d Cir. 2021) (quoting *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014)).  Rule 60(b)(6) is the provision on which Joseph relies in his current motion.

Although Rule 60(b)(6) "has an unquestionably valid role to play in habeas cases," it is not without its limitations.  *Gonzalez*, 545 U.S. at 529 (quotation marks omitted).  "Rule 60(b), like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings under 28 U.S.C. § 2254 only to the extent that it is not inconsistent with' applicable federal statutory provisions and rules."  *Id.* (quotation marks omitted).  This includes 28 U.S.C. § 2244(b), which imposes three restrictions on the extent to which a state prisoner may bring a second or successive habeas petition in federal court.  *Id.*  "First, any claim that has already been

---

*Kan. City Kan. Comm'y Coll.*, Civil Action No. 11–2646–KHV, 2014 WL 326021, at *2–3 (D. Kan. Jan. 29, 2014) (finding that prior judge's recusal under § 455(a) was appropriate and that his order granting summary judgment should be vacated, and holding, after independently reviewing the motion for summary judgment and supporting documents, that the prior order "accurately states the law and the factual record.  Viewing the record in the light most favorable to plaintiff, this Court independently finds that defendant is entitled to summary judgment for the reasons well stated in [the prior judge's] memorandum and order").  Notably, Joseph's § 2254 petition was thoroughly reviewed in the first instance by Judge Rueter, and Joseph filed *no objections* to Judge Rueter's recommended findings and conclusions.  Judge Goldberg, finding those conclusions were not clearly erroneous, approved and adopted the R&R.  That finding was correct.

adjudicated in a previous petition must be dismissed." *Id.* at 529–30 (citing 28 U.S.C. § 2244(b)(1)). "Second, any claim that has *not* already been adjudicated must be dismissed unless it relies on either a new and retroactive rule of constitutional law or new facts showing a high probability of actual innocence." *Id.* at 530 (citing 28 U.S.C. § 2244(b)(2)). "Third, before the district court may accept a successive petition for filing, the court of appeals must determine that it presents a claim not previously raised that is sufficient to meet § 2244(b)(2)'s new-rule or actual-innocence provisions." *Id.* at 530 (citing 28 U.S.C. § 2244(b)(3)).

To ensure petitioners do not use Rule 60(b) as an end run around § 2244's restrictions, a court reviewing a Rule 60(b) motion in the habeas context must first consider whether the motion is in actuality an impermissible application for habeas relief. *Id.* That analysis turns on whether the motion raises a "claim" seeking such relief. *Id.* For example, a motion, although brought under Rule 60(b)(1), in truth seeks habeas relief when it requests leave to present a claim that was omitted from the initial petition due to "excusable neglect." *Id.* at 531. Likewise, a Rule 60(b)(2) motion that seeks leave to present "newly discovered evidence" actually seeks habeas relief because it asks the court to consider, or reconsider, the merits of a habeas claim based on that evidence. *Id.* Indeed, the Supreme Court has warned that any Rule 60(b) motion that "attacks the federal court's previous resolution of a claim *on the merits*," regardless of whether it is based on new evidence, is really raising a claim for habeas relief. *Id.*

By contrast, a petitioner is not asserting a "claim" when "a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Id.* For example, a movant does not raise an impermissible habeas claim "when he merely asserts that a previous ruling which *precluded a merits determination* was in error," such as a denial for "failure to exhaust, procedural default, or

statute-of-limitations bar" or a denial caused by "[f]raud on the federal habeas court." *Id.* at 532 & nn.4–5 (emphasis added); *see also In re Coleman*, 768 F.3d 367, 371 (5th Cir. 2014) ("Procedural defects are narrowly construed . . . .  They include 'fraud on the habeas court,' as well as erroneous 'previous rulings which precluded a merits determination—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar.' (quoting *Gonzalez*, 545 U.S. at 532 nn.4–5) (alterations adopted)).

As this summary suggests, circumstances warranting Rule 60(b)(6) relief will "rarely occur in the habeas context." *Gonzalez*, 545 U.S. at 535; *see also Cox*, 757 F.3d at 125 (recognizing that courts should "heed the Supreme Court's observation—whether descriptive or prescriptive—that Rule 60(b)(6) relief in the habeas context . . . will be rare").

III.    **DISCUSSION**

Joseph contends that his motion is appropriate under Rule 60(b)(6) and does not amount to an improper second or successive § 2254 petition because this Court has not yet "rendered a merits ruling on Mr. Joseph's *fully-developed* [ineffective assistance of trial counsel] claim regarding forensic and ballistics evidence." (Doc. No. 30 at 17 (emphasis added).)  Although Joseph frames his claim as attacking a "technical defect" in this Court's ruling on the initial § 2254 petition, the Court must look beyond Joseph's description to determine whether he in fact attempts to raise a substantive claim for habeas relief.  *Cf. United States v. Vialva*, 904 F.3d 356, 360 (5th Cir. 2018) (explaining in § 2255 context that Rule 60(b) motions which "'in effect ask for a second chance to have the merits determined favorably' must be construed as successive habeas petitions regardless [of] whether they are characterized as procedural attacks.  Indeed, courts have repeatedly rejected attempts to portray *substantive* claims as asserting *procedural* defects" (quoting *Balentine v. Thaler*, 626 F.3d 842, 847 (5th Cir. 2010)) (collecting cases)).

A review of the record shows that Joseph impermissibly asks the Court to consider an ineffective assistance of trial counsel claim that was previously raised in his § 2254 petition and denied on the merits.  As noted above, Joseph's initial § 2254 petition argued, among other things, that his trial counsel provided ineffective assistance when he failed to fully investigate the forensic evidence and retain a ballistics expert.  (Doc. No. 1 at ¶ 12.)  Judge Rueter's R&R, which was adopted by the Court, recommended denying Joseph's claim because he had failed show that his counsel rendered deficient performance.  (Doc. No. 9 at 13 & n.3 (citing *Strickland*, 466 U.S. at 689 and *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991)).)  That was a ruling on the merits of the ineffective assistance claim.  *Cf. United States v. Washington*, 653 F.3d 1057, 1065 (9th Cir. 2011) (habeas court's prior ruling that petitioner's Confrontation Clause and actual innocence claims were "meritless" constituted a "previous resolution of a claim on the merits").

Joseph attempts to reframe this ruling as "procedural," arguing that it is based on a finding that Joseph failed to "provide[ ] the name of [a] ballistics expert" and failed to "produce[ ] an affidavit or expert report that would support his theory."  (Doc. No. 9 at 13.)  According to Joseph, this failure was caused by a "technical defect," i.e., "the PCRA court refused to provide Mr. Joseph (who was indigent and incarcerated) with the resources necessary to develop and present the claim."  (Doc. No. 30 at 17.)  But even assuming the PCRA court so erred[5] and that the error amounts to a procedural defect in the proceedings before the PCRA

---

[5] It is unclear whether the PCRA court in fact "refused to provide Mr. Joseph . . . with the resources necessary to develop and present the claim."  Notably, Joseph admits that the PCRA court granted him $1000 to retain an investigator once it was determined that he would be proceeding pro se.  Although Joseph's current counsel claims that he was "informed and believes that the PCRA court denied a request for funding to retain a ballistics expert," counsel has not put forth any evidence to support that belief.  Nothing in the record suggests that Joseph requested funds to retain a ballistics expert or that any such request was denied.  To the contrary, the record shows that Joseph requested that copies of the trial transcripts be provided to him at no cost and that his former PCRA counsel requested funds for an

court, Joseph has not explained how it amounts to a defect in the proceedings before the *federal district court* on habeas review.

As Judge Rueter found, Joseph failed to put forth evidence to support his ineffective assistance claim when it came before this Court.  Joseph did not argue before Judge Rueter that he was unable to retain an expert because of his indigent status, nor did he request an opportunity to provide a copy of Leisinger's expert report in connection with his § 2254 petition.  A review of the report shows that Joseph communicated with Leisinger about providing an expert report as early as May 1, 2019, four months before Judge Rueter issued his R&R, and that Leisinger finalized the report on October 1, 2019, three-and-a-half months before Chief Judge Goldberg adopted the R&R.  (Doc. No. 30-1 at 2.)

The Supreme Court has warned that "an attack *based on the movant's own conduct* . . . ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably."  *Gonzalez*, 545 U.S. at 532 n.5 (emphasis added); *cf. United States v. Lee*, 792 F.3d 1021, 1025 (8th Cir. 2015) (rejecting the movant's contention that his "current Rule 60(b) motion alleges a procedural defect in his initial habeas proceeding caused by his [habeas] counsel's ineffectiveness by not attaching important affidavits and other

---

investigator, which was granted.  (Doc. No. 42 at 75–76 (transcript request); *id.* at 27 (docket reflecting that Judge New granted permission for defendant "to hire private investigator" on May 27, 2016); *id.* at 99 (copy of June 21, 2016 order granting the "motion of counsel for the defendant" and "authorizing up to $1000.00 in funds for an investigator").)  As far as the Court can tell, the first time that Joseph requested a ballistics expert was in his October 20, 2016 response to the PCRA court's notice of intent to dismiss his amended PCRA petition without a hearing pursuant to 234 Pa. Code Rule 907.  (*See* Doc. No. 42 at 139 ("Wherefore Petitioner request[s] a Ballistic expert that specialize[s] in trajectory[,] an evidentiary hearing to present their findings[,] and a new trial."); *see also id.* at 268 n.9 (Pennsylvania Superior Court's 2022 opinion stating, "[Joseph]'s brief makes a passing reference to 'numerous attempts to have the courts pay for an expert to substantiate petitioner's claim due to his indigent status.'  The certified record contains no such requests.").)

supporting evidence to his § 2255[6] petition," and finding that "any attempt to relitigate the merits denial of the petition would count as a second or successive petition subject to AEDPA's precertification demands"); *In re Coleman*, 768 F.3d 367, 371–72 (5th Cir. 2014) ("Coleman argues that there was a defect in the integrity of her original habeas petition, namely that 'the additional evidence from the four witnesses recently discovered and relevant to the kidnapping issue was unavailable to this Court when it decided the claim previously, and the attached affidavits and the evidence contained therein are now available.' Her counsel's failure to discover and present this evidence, she argues, indicated that they were constitutionally ineffective. *This claim, however, is fundamentally substantive—she argues that the presence of new facts would have changed this court's original result.* Moreover, Coleman does not allege that the court or prosecution prevented her from presenting such evidence, but rather argues that her own counsel was ineffective in failing to present such evidence. The Supreme Court has held that such an argument sounds in substance, not procedure." (footnotes omitted) (emphasis added)); *Ward v. Norris*, 577 F.3d 925 (8th Cir. 2009) (holding the petitioner's Rule 60(b) motion was improper because it was "not based on a procedural defect, but rather attacked previous habeas counsel's omissions and asked for a second opportunity to have the merits determined favorably").

At heart, Joseph's Rule 60(b)(6) motion attacks his underlying convictions, asking the Court to consider anew his ineffective assistance of trial counsel claim in light of the newly produced expert report. This is a quintessential "claim" for habeas relief, which renders Joseph's

---

[6] *Gonzalez* involved a state prisoner, bringing a § 2254 petition, like Joseph here. However, courts have also consistently applied *Gonzalez* and its progeny to § 2255 petitions brought by federal prisoners. Accordingly, this Court relies on cases implicating § 2255 along with those that implicate § 2254.

motion a second or successive habeas petition. *See United States v. Schmutzler*, Criminal No. 1:CR-13-0065, 2017 WL 2987160, at *2 (M.D. Pa. July 13, 2017) ("[A] motion under Rule 60(b) will be treated as a 2255 motion if in substance it presents a claim for relief from the criminal judgment." (citing *Gonzalez*, 545 U.S. at 531–32)); *Perrego v. Gilmore*, No. 3:14cv1799, 2017 WL 914250, at *3 (M.D. Pa. Mar. 8, 2017) ("In the instant matter, petitioner asserts his Rule 60(b)(6) motion attacks the integrity of his federal habeas corpus proceeding, not his underlying conviction.  Petitioner's motion, however, requests the court address several previously raised claims pertaining to his state court conviction . . . ."); *cf. Blystone v. Horn*, 664 F.3d 397, 413 (3d Cir. 2011) (explaining that "a motion that seeks to present newly discovered evidence in support of a claim previously denied presents a claim"); *Norris v. Gilmore Superintendent SCI-Greene*, No. 1:18-cv-02264, 2018 WL 6322965, at *1 (M.D. Pa. Dec. 4, 2018) (construing state prisoner's Rule 60(b)(6) motion as a second or successive § 2254 petition where he argued that "newly discovered evidence significantly undermines the prosecution's theory in this case, and that affidavits attached to his motion from alibi witnesses show that he is actually innocent of the crimes for which he was convicted").

Because Joseph does not have permission to file such a petition from the Third Circuit, this Court lacks jurisdiction, and the motion is denied.  *See Parham v. Klem*, 496 F. App'x 181, 184 (3d Cir. 2012) ("Because federal courts lack jurisdiction to consider a second or successive habeas petition if a petitioner does not obtain" "an order from this Circuit authorizing" the petition, "the District court would lack jurisdiction over the [Rule 60(b)] motion if it is indeed a second or successive habeas petition."); *Perrego v. Gilmore*, No. 3:14cv1799, 2017 WL 914250, at *2 (M.D. Pa. Mar. 8, 2017) ("If the [60(b)] motion is construed as a second or successive

habeas petition, the district court does not have jurisdiction to entertain the motion unless the petitioner is authorized by the court of appeals to file a successive petition.").

## IV.    CONCLUSION

Joseph's Rule 60(b)(6) motion is denied for lack of jurisdiction.  Because jurists of reason would not find it debatable whether the Court is correct in this procedural ruling, no certificate of appealability shall issue.  *See Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 282 (3d Cir. 2021) (confirming that a certificate of appealability "is required when a petitioner appeals the denial of a Rule 60(b) motion seeking reconsideration of a dismissal of a habeas petition, even if that dismissal was on procedural grounds" and that to receive such a certificate, the petitioner must make a "credible showing that the District Court's denial of his Rule 60(b) motion was erroneous"); *United States v. Ailsworth*, 631 F. App'x 626, 627 (10th Cir. 2015) ("The district court dismissed Ailsworth's [Rule 60(b)(6)] motion for lack of jurisdiction [as an unauthorized second or successive § 2255 petition].  As that ruling rested on procedural grounds, he must show both 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, (2000))).

An appropriate order follows.